Case number 19-5862, Justin Medlin v. City of Algood, TN, et al. And case number 19-5866, Vaughan Larson v. City of Algood, TN. Oral argument, 15 minutes for plaintiffs, 15 minutes to be shared by the defendants. Mr. Giammo for the appellants. Good morning. Morning, your honors. May it please the court, I've asked for five minutes for rebuttal. Very well. And may it please the court once again, this case is on appeal from the Middle District of Tennessee. And we are appealing the grant of summary judgment in two cases that have been consolidated in this appeal. There were originally three cases that were consolidated for discovery. And I'm not really sure, I've never argued two cases at once. So I will do the best I can and answer the questions as they come depending on the case. And we were directed at the beginning to maybe argue things that were not sufficiently briefed, at least in our estimation. And I don't think in reviewing my briefs that I distinguish these cases enough, even though they were consolidated for an appeal. I don't think that I properly or adequately distinguish them because there were common threads and common questions of law and fact for which the cases were consolidated. But they are different cases. And some of the things that I don't think that I properly at least emphasized in the briefs are that these were different employees in different positions in different situations. Ms. Larson was the city clerk and city recorder, and I think that opposing counsel in their briefs had acknowledged that she was an officer, a city official. And therefore, in some of their arguments, may be exempted from the handbook even if she had a property interest. But by the same token, saying that she didn't necessarily have the protections of the city charter. So I think that's one important distinction that Mr. Medlin was a detective, but he wasn't necessarily a city official. He was merely an employee, and I don't think that I adequately express it. So his property interest comes from the handbook? Is that where – Correct. That's our argument that – Where? I didn't hear you. The handbook. The handbook. Now – and opposing counsel is correct. The handbook does expressly state that they're not granting property interests. And when these folks sign it, we know that people don't necessarily understand that language when they sign it. But as we've cited in our brief, a litany of several cases at least, that a property interest can be generated or derived from an implied contract. That is a common understanding of the parties and based upon conduct of the parties. And when we brief these cases, both cases – How the city treated the handbook and whether – how often they complied with it and all of that? There was. It was limited based on the information that we had at the time. The record as we've cited it demonstrated there were multiple – and again, there's a difference. In this case, Mr. Medlin was offered a pre-termination hearing. Right. Ms. Larson was not. Right. And so we cited multiple instances before this where the handbook was complied with. In addition to the language itself of the handbook, which says you shall have the right to these things, to these protections, which is completely at odds with the position taken by the appellees in this case, which is that there really is no property interest being generated from the language of the policy handbook. In addition, and going back to what I originally was saying, that Ms. Larson is not exactly similarly situated because the conduct that they were alleging that triggered these dismissals was very different. There's no – there's really no getting around that Mr. Medlin's conduct by any reasonable measure can be compared with Ms. Larson's. Well, there's no question she is a far more sympathetic case. Absolutely. Okay. What do you do – and we – I mean, we have to apply Tennessee law. Correct. To determine whether there's a property interest. And we're not talking about, you know, public policy or anything. There are no other claims. It's just you have to show a property interest. So what do you do about the Ogburn case? Right. Which seems to be directly on point. Except for one, I think, important distinction. First, that case definitely took the wind out of my sails when I was briefing this and on summary judgment. It appears to be on point, but I think the Ogburn case first, I believe that was an unpublished opinion that was picked up in NYOTA by the Sixth Circuit, and it does cause some problems. I've acknowledged that. But in this case, again, the distinction is that Ms. Larson is a public official. Now, I may disagree with both of those cases in their interpretation of the language may as being permissive. This doesn't seem to make any sense to me at all, but I've got to deal with the cases as they come. But in that particular case, if I'm making a distinction, the distinction that I would make is that she is a public official, not just a garden variety employee. In this particular case, if you look at the handbook in this case, it says there's a very dedicated, very specific procedure for removing public officials. They've acknowledged she is in this particular case. And I believe – I know in the Ogburn case, I believe it was a police officer, but I can't remember exactly. I believe those were employees, and that's the distinction I would make because if you don't protect your public officials, then there really is no sense in having a chart of provisions at all. And again, but still also, we're talking about, again, we travel under the theory of implied contract again. I think you have to take the handbook language and read it in Power Materia with the protections, at least ostensibly, granted by the city charter. And look at that previous conduct, the conduct of the city in protecting other employees, whether she's an employee or official. I think she's both. And looking at that, does that trigger a protection based upon an implied contract? Because in the cases that we've cited, it seems to be – Okay, so what tenancy cases are you relying on that say that if you have a handbook, even if you reserve the right to change it, as long as you are abiding by it, there's an implied contract? I couldn't find any specific cases that really address that directly. I just generally cited the Supreme Court Ramsey case, the Summerlin case, and the Sixth Circuit case of Baus, which talked about, in generic terms, this implied contract based upon the mutual understanding of the parties. And I'd go back to the record. Mr. Morrison in particular, when he was questioned, which is in the record, sitting as the city manager in this particular case, when I asked him about these particular things, he seemed to think that these were mandatory at the time. I'm very sympathetic to Ms. Vaughn in particular. So there's no really direct case on point that I could find anyway. But again, if we travel under this theory that there's an implied contract based on the common understanding of the parties, Ms. Vaughn certainly believed that she had some protection. I think a fair reading of the record, certainly in a summary judgment – that's what we're talking about here, summary judgment context – is that he believed she had some protections in this particular case. And so based on that common understanding, that she can make a claim at least at this phase that she had a property interest derived from this implied contract theory. She's not making any substantive due process claims in this appeal. And as far as Mr. Medlin is concerned, unless the court has specific questions about his substantive due process claims, I believe that I briefed that. But I really – in terms of the due process protections, really that's – what I really wanted to stress was I think they're different cases. The same theories, but very different cases. Again, her conduct was very different as opposed to his conduct. Her position was very different. And we have to accept that he was constructively discharged. You would. And that's the one thing I forgot. That's the major hurdle that he has in addition that she does not. And opposing counsel has properly pointed out that I think the burden is on him to show that – because the presumption is that he voluntarily resigned. He signed a letter, sent it, that there was some sort of duress or some sort of coercion. I think one of the cases I cited talked about making an environment so intolerable that you couldn't work there anymore. But that's not exactly on point because here he was already on suspension when this was going on. Again, they didn't follow the handbook in terms of how they suspended him and the charges, notice of charges and things of that nature. But the onus and the burden is on him to prove that there was some duress or coercion. We've argued and set forth in our brief that we already knew that the game was over. Fix was in. And there was evidence in the record to dispute the fact that it wasn't – their allegation that it wasn't. He really had no choice in the case but to take some money that he could salvage from this and voluntarily resign. Otherwise, it was a fait accompli. He was not going to get anywhere with a hearing. And again, Ms. Larson didn't have that opportunity. Ms. Larson – and they've argued in their brief that she had – she did have a due process hearing, which in this case consisted of the city mayor, which is a ceremonial position, coming in and firing her, giving her a couple of documents and saying, do you have anything to say for yourself? Now go hit the bricks and don't come back. And then a few weeks later, having the city council in secret adding to their business this particular set of business and reaffirming all of the terminations, including that of Ms. Larson and Mr. Medlin and the third party, which is not on appeal here today. She could only be hired and fired by the council. Is that right? That's my understanding of this. That's what I would argue based on the city charter. But he was subject to the city manager or the police chief or whoever else could do that action? I believe it's their understanding and interpretation, and I have nothing to disagree with that, that he was under the auspices of the former police chief. Any further questions? Good morning. Good morning, Your Honors. May it please the Court, my name is Andre Greppin. I represent the city of Allgood, Keith Morrison, and Gary Harris. I'd like to start today by addressing the existence of a property interest for purposes of due process. Can you keep your voice up, please? I'm hearing half of your sentence, each sentence. I'd like to start today by addressing the existence of a property interest for purposes of due process. An agreement to split time? No, Your Honor. Pardon? No, Your Honor. All right. I think on my sheet I've got two attorneys listed, but there's only one. You're it? I'm it for today. Okay. After addressing the property interest argument for purposes of due process, I'd like to look at the First Amendment substantive due process claim, and then if there's time left over I'd like to loop back around and explain why, even assuming that Midland or Larson had a protected property interest by the 14th Amendment, they received all process that they were due. This case is fundamentally about a public employer's right to respond to and correct inappropriate sexual conduct in the workplace. It's important to point out here that the plaintiffs agree that the city had a right and a duty even to make sure that this type of conduct wasn't happening in the workplace and to address it. And they don't claim that the outcome would have been any different if they had been afforded additional procedures. They acknowledge and admit what they did was wrong. What they do argue is that what she did was wrong. What was she accused of doing? She engaged in the illicit sexual communications using the work communication devices, and the city's provided cell phone service. She used her own, right? I'm sorry? It was her own phone, right? The police officer, Justin Midland, had a city-provided cell phone and a city-provided cell phone service, and she testified that she knew that. And a lot of these communications were happening during work hours while he was on duty and while she was on duty as well. So if I'm communicating with somebody else and they have a device, I can get fired? What am I supposed to do? Inquire? Are you sure you're not on a public contact? Was it that she didn't report it after she found out that this conduct was going on? Is that the basis? No, I think the basis of it was that she knew that the police officer was on duty when it was happening and participated in it. And, no, it's not incumbent upon a participant to make sure that you're not communicating with somebody who has a work phone or is on duty, but she knew that at the time. The bottom line is that the city clerk serves at the discretion of the council, right? That is correct, and an at-will employment state like Tennessee is. She can fire the clerks at will. Sure, for a bad reason. But there's a provision, right? There is a provision. Are you talking about the city charter? There is a provision in the city charter, but as the Court has already pointed out, the Ogburn case forecloses that it talks about the language in the provision of the city charter and how it uses the permissive may in connection with these enumerated offenses for which an official can be terminated. So what the provision in the city charter says is that the mayor or other public official may be fired for these certain enumerated offenses, and if the council elects to use that procedure, then they shall follow these procedures. What's the point of having a provision like that if it's meaningless? I think the enumerated offenses are probably serious enough to warrant a policy decision to where they decided to add some additional protections. But as the Tennessee Court of Appeals held in Ogburn, the use of the word may is permissive and necessarily implies that there are other reasons why an official or an employee could be fired under that provision and other methods of doing it, and that's the controlling interpretation of Tennessee law. And the district court properly applied that, and this court applied that same case and same reasoning in Brown v. City of Nyota, which we rely on as well, which is a published opinion of this court. So that's the controlling interpretation of Tennessee law. And, of course, due process rights, their property rights for purposes of due process, are created by operation of state law. And so the Tennessee Court of Appeals' opinion would be dispositive here. Does it matter that it wasn't published? It does not matter that it wasn't published. First of all, it was adopted by Brown v. City of Nyota, a published opinion by this court, so this court has already relied upon it in a published opinion. Second of all, I think the district court cited several cases, published cases of this court, where they said that absent some good reason that the state supreme court wouldn't rely on it or that it's just wrong on the law, they would rely on unpublished opinions of state courts. So that's what the court did in Brown v. City of Nyota and should do the same thing here. So that case just really is dispositive. To your question and Mr. Chiama's point, though, why create the provision if it doesn't mean anything? The policy reason behind creating some policy for a termination procedure is totally and completely unconnected with whether there's a substantive right to employment to begin with. The United States Supreme Court in Town of Castle Rock v. Gonzalez said that having an established procedure does not in and of itself create a substantive right to employment. You don't have a substantive right to a procedure. The procedure exists to safeguard substantive rights if one exists, but it doesn't reverse engineer, it doesn't work backwards. Just having an established procedure doesn't mean that every official in the city of Allgood or every employee of the city of Allgood has a substantive property right to their employment. Their employment, there is no guarantee of their employment. As this court knows, Tennessee has a very strong presumption that employment is at will. So absent a contract for employment or a definite term of employment, the employment relationship is presumed to be at will and the plaintiff has the burden of rebutting that presumption. They can't do that here because they don't claim that they have a contract of employment. They don't claim that employment is for a definite term. What they've claimed is that the city handbook creates an implied contract. But that's despite clear and unequivocal language in both the city handbook and the authorizing ordinance that say the exact opposite. So both the handbook and the ordinance say that this is not a contract of employment and that the city reserves the right to unilaterally change the provisions of the employee handbook with or without notice at any time. But it didn't, did it? Well, it may not have made written changes. It may have acted inconsistently with what the written policy was. But that's not a due process violation if there's no substantive right to employment to the job to begin with. The government is free to create procedures that the Constitution doesn't require. It doesn't automatically constitutionalize the employment as a substantive right. So no, they didn't make written changes to the procedure. Maybe they acted inconsistently with it. But several opinions of this court and other courts have held that even if you do have a substantive right in employment, all that's required is what the due process clause requires, what's minimally constitutionally adequate. And so the state can create procedures that are more than what the Constitution requires, but failure to follow those is not a due process violation even if you have a substantive right to employment, which these employees just don't have. So in the face of the express language that says this is not a contract and we reserve the right to change it, the standard that this court articulated in Brown v. City of Nyota is that there's an extremely high standard under Tennessee law for a plaintiff to prove that a handbook creates an implied contract. They have to point to unequivocal language demonstrating the employer's specific intent to be bound. That's a very high standard. The court said there's no clearer way for the government to indicate its intent to be bound or alternatively not to be bound than to just say it. And that's what the City of Alga did here. They put it in the language of the employee handbook. They put it in the authorizing ordinance, which, by the way, the appellant, Vaughn Larson, wrote and presented to the city council. Can you say that again? Yes. The city recorder, Vaughn Larson, who is the appellant, wrote the ordinance authorizing adoption of the city handbook, which says this is not a contract of employment and we reserve the right to change it at any time without notice. So the city has done all it can by announcing its intent from the very beginning that this is not a contract. And there can just be no argument that there was a meeting of the minds that has created an implied contract to create a substantive right in employment. In the handbook. In the handbook, correct. The same goes for the city charter as well because, again, Ogburn, which is a Tennessee state law case, this is a Section 1983 due process case, the Tennessee Court of Appeals said that this charter provision, which is identical, substantively identical, and the district court laid them out right next to each other to show that they're basically verbatim, that was insufficient under Tennessee law to create a property interest in employment. So, and again, that's the controlling decision and interpretation of Tennessee law. And this charter provision that we're talking about here is virtually identical to the one in Ogburn. This court has already relied on Ogburn and adopted it and should do the same thing here. I guess turning to the First Amendment substantive due process claims, which aren't really very well developed, Medlin, but not Larson, claims that he has some sort of protected First Amendment right or interest to engage in casual sex with his coworkers and members of the city council. It's not clear whether he asserts a speech or associative First Amendment interest, but under any standard his First Amendment claim nonetheless fails. Courts have never recognized even close personal friendships or even sexual relationships among coworkers as among the most intimate associations that the First Amendment protects for associational purposes. Nor has Medlin even attempted to show that any speech or expressive conduct on his part involved a matter of public concern or articulated, even if he did, why that speech right would outweigh the employer's interest in promoting the efficiency of the services it performs to its employees. And he certainly hasn't presented any specific non-conclusory evidence that links whatever speech or conduct that he's asserting or may be asserting to the employer discipline. To the contrary, all the evidence in this case indicates that Medlin and Larson and Bohannon, the third plaintiff who's not part of this appeal, were all fired for engaging in inappropriate sexual conduct and communications in the workplace with city property while on duty. And they all three testified that they knew what they did was wrong. They knew that the city couldn't tolerate that. And exactly what did Larson say in that regard? Larson, I think, testified in her deposition that she knew the city had a sexual harassment policy. She admitted that Medlin had propositioned her for sex. Where did she admit her own wrongdoing? She admitted that the city couldn't permit this type of behavior to occur and had a right and an obligation to respond to it. To her behavior or to his behavior? Well, the entire situation, I guess. I'm not sure that the merits are at issue, but you keep saying that. And I'm questioning whether she admitted wrongdoing. None of what they did was during job time, right? No, it was all – well, a lot of it was during job time. A lot of it while Medlin was on duty and she knew that he was on duty and knew that he was communicating with her using his work cell phone. So she may have a more sympathetic case than Medlin, certainly. But in an employment at will state, the employer, especially a public employer, faced with this lurid kind of situation is well within its rights to take whatever action it sees fit to eradicate that kind of behavior in the workplace. And that's the policy decision that the city of Allgood made. And it doesn't contravene the First Amendment or the Fourteenth Amendment because they had no property interests in their jobs to begin with. I see that I'm out of time. I'd be happy to answer any additional questions. If not, I would ask that the court affirm the district court. Thank you. Rebuttal. Thank you, Your Honors. Again, it may please the court. First off, with regard to Ms. Lawson, I'm not sure it matters for the summary judgment. But for the record, no, she did not admit she did anything wrong. And I think it's been twisted a little bit to say that she said she knew that all this was going on while on duty. That's not – I mean, Your Honors have the record and I think I briefed it. I think she said the city certainly has a right to police its sexual harassment policies. And what Mr. Medlin was doing was not very good, but she never admitted what she did was wrong and that Mr. Medlin was a detective. He was working different shifts, different hours. We dispute that he had a – again, this may not be here or there, but that he had a city phone. We believe it was his personal phone. It was certainly her personal phone. And she might have admitted that some of the stuff that she said may have received while on work hours. So whether or not that makes a difference in the analysis of this case, I don't know. It may, but I wanted to clear that up. That is simply not what happened here. That is not what's in the record, and I wanted to make sure that was clear. No one has argued, and we're not arguing, that the property interests emanate from the procedure itself. That's not what we've argued. That's not what the cases say. To be clear, we believe the property interests emanate from state contract claims. In this particular case, we think both, again, the conduct of the parties, as was discussed earlier in the first set of argument, that the city had this language that said we shall do these – you have a right to these certain things set forth in the handbook. Completely inconsistent with the position that there are no property rights, even though they did say that. It does expressly state that on there. Ms. Larson is the city clerk and the recorder, so I didn't want to leave the impression that she actually drafted that particular language. She may have printed up the documents and did what she was supposed to do as the city official there. But, again, we're not arguing that. We're arguing it's an implied contract based upon the conduct of the parties, and to say that there's absolutely no evidence of a failure of meeting of the minds, well, that's the essence of this case. I mean we're on summary judgment proceedings. The question is whether or not we've elicited sufficient facts that a reasonable trier fact could find that there was not a meeting of the minds and that there was – or at least there was an implied contract based upon mutual understanding. And going back to Ms. Larson again, it's sort of in the back of my mind because it had been brought up. When I asked everybody what she did wrong, no one could tell me what policy or procedure she violated. I think a former mayor said that she acted immorally, but that was pretty much the extent of it. Again, it is our position that when you read these things together, it is an utterly meaningless provision of the city charter if you're going to say that may is a permissive word in this particular context that renders the entire thing inoperative if we choose to not use that procedure. We think reading those things all together… showing of unfitness for public service or permanent disability. I mean what if she's terminated from grounds other than that? Are you saying that those are the only grounds that a city clerk can be terminated on, therefore she has a job for life unless she commits grave misconduct or is permanently disabled or has unfitness? I couldn't remember if there's a catch-all provision in there as well, but I don't remember that, but no, that's not what we're arguing. It doesn't. It only has three terms. And I guess your position is once you hire a city clerk, she has a job for life absent these three things, right? No. No? Because the hearing only applies to these three things. Well, there are also provisions in the handbook that they didn't follow. Well, the handbook doesn't – does the handbook apply to the city clerk? I think it does. Okay. I didn't think it applied to city officials, but maybe it does. I'll look at it. I hope that there's some modicum of at least some modicum of due process for this lady. I mean, the alternative is that she has absolutely no protection. Well, that's usually – I mean, okay, I mean, usually a city clerk serves at the discretion of the council. And, okay, I mean, maybe it's different in Ohio or something. And here's one of the problems with this is that if we've been able to flesh this out, if they had done – at least given us some public notice that they were going to ratify the termination. Again, from the very beginning, there was some uncertainty as to whether or not she'd been terminated. In the record, we sent a letter saying, is she terminated? Never a response. And then a few weeks later – a couple weeks later, he does his public press conference where he smears all of these folks. And then we have this stuff coming up on the council business without any advance notice. And so I'm not really exactly sure what their position was other than we just affirmed this. I'm sorry. I misspoke. This is Tennessee, not Ohio. Okay, any further questions? All right, thank you. Thank you very much. Thanks for your argument. All right, case is submitted. And I believe that concludes the arguments, oral arguments this morning. So you may adjourn the court.